EXHIBIT "A"

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| M. DIANE KOKEN, in her official capacity as Insurance Commissioner of the Commonwealth of Pennsylvania, as Liquidator of RELIANCE INSURANCE COMPANY (IN LIQUIDATION),<br><br>      Plaintiff,<br><br>  v.<br><br>GPC INTERNATIONAL, INC.,<br><br>      Defendant and<br>      Third-Party Plaintiff,<br><br>  v.<br><br>ZURICH-AMERICAN INSURANCE COMPANY,<br><br>      Third-Party Defendant. | Civ. No. 05-223-SLR |

Gerald E. Arth, Esquire and Cheryl A. Garber, Esquire of Fox Rothschild LLP, Philadelphia, Pennsylvania; Sheldon K. Rennie, Esquire of Fox Rothschild LLP, Wilmington, Delaware. Counsel for Plaintiff.

Andre G. Bouchard, Esquire and John M. Seaman, Esquire of Bouchard Margules & Friedlander, P.A., Wilmington, Delaware. Counsel for Defendant and Third-Party Plaintiff. Of Counsel: Herbert C. Ross, Esquire and Lori Marks-Esterman, Esquire of Olshan Grundman Frome Rosenzweig & Wolosky LLP, New York, New York.

**MEMORANDUM OPINION**

Dated: July 31, 2006
Wilmington, Delaware

ROBINSON, Chief Judge

## I. INTRODUCTION

On April 15, 2005, plaintiff Diane Koken ("plaintiff"), as liquidator of Reliance Insurance Company ("Reliance"), filed this breach of contract action against defendant GPC International, Inc. ("defendant") to recover retrospective worker's compensation policy premiums allegedly owed to Reliance by defendant. (D.I. 1) Defendant filed its original answer on June 24, 2005. Currently before the court is defendant's motion for leave to file an amended answer, which was filed on April 13, 2006. (D.I. 37) For the reasons stated below, defendant's motion for leave to file an amended answer is denied.

## II. BACKGROUND

From 1992 until June 30, 1995, Reliance issued worker's compensation and employer's liability insurance policies to defendant and its subsidiaries in several states. (D.I. 1 at ¶ 7) The policies required payment of an initial, estimated premium at the outset of a policy's year term. The policies also provided for, at the end of every year, the calculation of a "retrospective premium," which is a readjustment of the policy premium based on actual and projected claim payments for the policy year. The policies specify that, if the retrospective premium was more than the initial premium, defendant would be responsible for paying the difference to Reliance; if the retrospective premium was less than the initial premium, Reliance

would be responsible for refunding the difference. (Id. at ¶ 10) Third-party defendant Zurich-American Insurance Company ("Zurich") issued worker's compensation and employer's liability insurance policies to defendant from June 30, 1995 until 1997. (D.I. 38 at 4) Unlike the policies issued by Reliance, premiums for Zurich's policies were only adjusted once annually based on defendant's actual payroll. (Id.)

Plaintiff became the liquidator of Reliance on October 3, 2001, and a subsequent retrospective premium adjustment was performed showing that defendant owed Reliance $448,199.[1] (D.I. 1 at ¶¶ 15-16) Ninety days after the liquidation order, responsibility for handling any claims against Reliance's insureds shifted to various state guaranty associations, including the California Insurance Guaranty Association ("CIGA"). (D.I. 45 at 4)

Plaintiff filed suit in April 2005 to collect the unpaid balance and, in its June 2005 answer, defendant asserted seven affirmative defenses. A scheduling order set May 15, 2006 as the conclusion of fact discovery and September 5, 2006 as the first day of trial.[2] Defendant filed its motion for leave to file an

---

[1] Although plaintiff's complaint specifies an unpaid balance of $448,199, plaintiff also seeks reimbursement for ongoing payments and contends in its opposition brief that the principal balance increased to $505,096. (D.I. 45 at 4)

[2] Also pending before the court is defendant's motion for amendment of scheduling order, but this does not affect the trial

amended answer on April 13, 2006. In its amended answer, defendant sought to assert two additional affirmative defenses alleging that plaintiff's claims are barred because plaintiff, Reliance, and CIGA: (1) Breached the covenant of good faith and fair dealing in processing and handling the worker's compensation claims which are the bases for the unpaid premiums; and (2) Failed to act in an objectively reasonable manner in processing and handling the same claims.[3]  (D.I. 38 at 1)

The first insurance claim in dispute was submitted by defendant to Zurich in April 1996 for injury allegedly sustained by an employee, Frank Jamaica, between January 1995 and April 1996 (the "Jamaica claim"). (Id. at 5)  The Jamaica claim was rejected by Zurich and referred for payment to Reliance. Defendant alleges that plaintiff, Reliance, and CIGA mishandled the Jamaica claim by inadequately investigating the source of his injuries, failing to seek reimbursement from Zurich, failing to investigate the timing of the claim, and failing to mitigate payments after Mr. Jamaica missed several appointments. (Id. at 16)  The second insurance claim in dispute involves an injury allegedly sustained by Darrell Marshall in 1993.[4] (Id. at 5)

---

date.

[3]The two proposed affirmative defenses are listed as the eighth and ninth defenses, respectively, on the amended answer.

[4]The parties provide comparatively little information regarding the Darrell Marshall claim.

3

## III. STANDARD OF REVIEW

A party may amend its pleadings with the written consent of the opposing party or "by leave of court . . . and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The Third Circuit has adopted a liberal approach to the amendment of pleadings to ensure that "a particular claim will be decided on the merits rather than on technicalities." Dole v. Arco Chemical Co., 921 F.2d 484, 487 (3d Cir. 1990). Amendment, however, is not automatic. "While Rule 15(a) provides that leave to amend should be 'freely given,' a district court has discretion to deny a request to amend if it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." Hill v. City of Scranton, 411 F.3d 118, 134 (3d Cir. 2005); see also Forman v. Davis, 371 U.S. 178 (1962).

"The passage of time, without more, does not require that a motion to amend [an answer] be denied; however, at some point, the delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party." Adams v. Gould Inc., 739 F.2d 858, 868 (3d Cir. 1984). In order to deny leave based on the prejudice to the plaintiff, the prejudice must be "substantial or undue," and "there must be some showing that plaintiff's ability to present

4

its case would be seriously impaired were amendment allowed." Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (3d Cir. 1993); Dole v. Arco Chemical Co., 921 F.2d 484, 488 (3d Cir. 1990).

Futility of amendment occurs when the complaint, as amended, does not state a claim upon which relief can be granted. See In re Burlington Coat Factory § Litig., 114 F.3d 1410, 1434 (3d Cir. 1997). If the proposed amendment "is frivolous or advances a claim or defense that is legally insufficient on its face, the court may deny leave to amend." Harrison Beverage Co. v. Dribeck Importers, Inc., 133 F.R.D. 463, 468 (D.N.J. 1990) (internal citations omitted).

IV. DISCUSSION

A. Choice of Law

The first issue in this case is which law applies. Plaintiff contends that the law of the State of New York applies, while defendant contends that the law of California applies. To determine the relevant law, a federal court in a diversity case must apply the conflict of laws rules of the state in which it is sitting. See Klaxon Co. v. Stentor Electric Manufacturing Co., 313 U.S. 487 (1941). Delaware courts apply the "most significant relationship test" to determine which state law governs in an action. Hill v. Equitable Trust Co., 562 F.Supp. 1324, 1334 (D. Del. 1983). The factors that must be considered in a contract dispute include "(a) the place of contracting, (b) the place of

5

negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties." Whiteside v. New Castle Mutual Ins. Co., 595 F. Supp. 1096, 1098 (D. Del. 1984) (quoting Restatement (Second) of Conflict of Laws § 188(2) (1971)).

Defendant is a Delaware corporation, Reliance is a Pennsylvania company, and the company listed on the insurance policies is a New York company. (D.I. 50 at 4) California is where Mr. Marshall and Mr. Jamaica, the subjects of the disputed claims, worked and where their injuries occurred. Mr. Marshall and Mr. Jamaica's claims were processed in California, CIGA is a California agency, and the insurance policies were originally issued to what was a California corporation. The policies, however, were issued to a New York company through a New York broker and covered workers in states including New York. (D.I. 45 at 9)

The Whiteside court found that "the crucial factor in a property insurance dispute is the location of the insured property." Whiteside, 595 F. Supp. at 1098. However, it does not follow that in a worker's compensation policy dispute, the location of the risk is determinative. As a result, defendant's emphasis on the location of the insured risk in California is misguided. Furthermore, the policies covered employees in over

6

one dozen states, making this factor equivocal.[5]  Although the instant dispute is based on worker's compensation claims from California, it does not follow that the contracting parties intended California law to govern contractual disputes over the nationwide policies.  From the record, New York has the most significant relationship to the policies, so the court will apply New York law in examining the causes of action.[6]

B.  **Amending Pleadings**

Plaintiff argues that the amended answer would be futile because the proposed affirmative defenses are not recognized under New York law.  With respect to defendant's eighth affirmative defense, "New York has never recognized a cause of action or defense for breach of an insurer's implied covenant of good faith and fair dealing where, as here, it is alleged that an insurer's failure to reasonably investigate claims made against the insured results in an increased retrospective premium."  Liberty Mutual Ins. Co. v. Precision Valve Corp., 402 F. Supp.2d

---

[5]Defendant's remaining arguments in favor of California law are not persuasive because they do not address the parties' expectations of which law is to govern a dispute, a matter of considerable importance in contracts.  See Restatement (Second) of Conflict of Laws § 188 cmt. b (1971).

[6]Defendant contends that plaintiff failed to meet its burden in establishing there is "no possibility" that California should govern, but the record is sufficiently developed to determine this issue of law.

7

481 (S.D.N.Y. 2005). Defendant does not contest that this defense is futile under New York law.[7]  (D.I. 50 at 5-6)

Defendant's ninth affirmative defense alleges that plaintiff, Reliance, and CIGA failed to act in an objectively reasonable manner in processing and handling the worker's compensation claims. Defendant relies on two recent cases in support of this defense under New York law. See Transp. Ins. Co. v. Star Indus., Inc., No. CV 01-1341(ARL), 2005 WL 1801671 (E.D.N.Y. July 28, 2005); Comm'r of the State Ins. Fund v. Photocircuits Corp. 20 A.D.3d 173, 182, 798 N.Y.S.2d 367, 373 (App. Div. 2005). In Photocircuits, the defendant opposed a motion for summary judgment by claiming its insurer breached the insurance policy by failing to perform its express duties when it made payments to an imposter, failed to appear at hearings, and failed to submit timely applications to cap payments. See Photocircuits, 20 A.D.3d at 179-180. The worker's compensation policy in Photocircuits had a specific obligation for the insurer to defend against claims brought by employees and only pay for injuries caused or aggravated by the conditions of the claimant's employment. See id. at 181.

The Photocircuits court held that the insurer had an obligation to perform this contractual obligation in an

---

[7] Defendant seems to have included its eighth defense in case the court concluded that California law governs.

8

"objectively reasonable" manner. Id. The court acknowledged that New York does not recognize the breach of an implied obligation of good faith and fair dealing as a defense "in the ordinary course," but held that the precedent caselaw "cannot be read to give the [insurer] a blanket excuse for a failure to even minimally comply with its basic contractual obligations to perform in a reasonable manner." Id. at 182. Consequently, the court reversed a grant of summary judgment because there was "clearly a question of fact as to whether the [insurer] met its basic obligation to perform its duties . . . under the Policy in a reasonable manner." Id. at 183. In closing, the court reiterated that its holding was in light of "extreme facts" that amounted to "more than mere negligence" and was not meant to overrule any precedent. Id. at 182-83.

In Transp. Ins. Co., the court likewise held that the insurer's alleged mismanagement of claims was a question of fact because the defendant was alleging a breach of "express obligations under the policy, and not any 'implied' duties." Transp. Ins. Co., 2005 WL 1801671 at *6 (denying summary judgment when, among other things, the insurer frequently delayed the processing of multiple claimants).

Although defendant repeatedly asserts that its defense is based upon Reliance's failure to act in an objectively reasonable manner, defendant does not explain how this case is more than

9

"mere negligence" and, therefore, not in the "ordinary course." See Photocircuits, 20 A.D.3d at 182. Rather, the allegations of Reliance's claims mismanagement, if true, are most similar to the examples of an "inadequate and careless investigation," which have not been allowed as a defense against retrospective premium payments. See e.g., Liberty Mutual Ins. Co. v. Thalle Constr. Co., 116 F. Supp.2d 495 at 497 (S.D.N.Y. 2000). Defendant states in its reply memorandum that Reliance "grossly" mismanaged the disputed claims in violation of its contractual obligations. (D.I. 50 at 7) However, the court finds this insufficient to distinguish well-settled New York precedent that prohibits using a breach of the implied covenant of good faith and fair dealing as a defense to nonpayment of retrospective premiums. See, e.g., Precision Valve, 402 F. Supp.2d at 487-88. Leave to amend is denied by the court because defendant's proposed ninth affirmative defense is facially legally insufficient under the governing law.[8]

## V. CONCLUSION

For the reasons stated, defendant's motion for leave to file an amended answer (D.I. 37) is denied. An order shall issue.

---

[8]Because the court has found the amended answer is futile, plaintiff's additional arguments that the amendment is untimely and prejudicial will not be addressed.